UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ALFREDA ALTERMESE LACAPRA,

                    Plaintiff,

v.                                                    Case No:  6:17-cv-584-Orl-18GJK

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.
_____

### REPORT AND RECOMMENDATION

Alfreda Altermese Lacapra (the "Claimant"), appeals to the District Court from a final

decision of the Commissioner of Social Security (the "Commissioner") denying her application

for Supplemental Security Income benefits. Doc. No. 1. Claimant alleges a disability onset date

of September 22, 2012. R. 338. Claimant argues that the Administrative Law Judge (the "ALJ")

erred by 1) failing to properly develop the record; 2) making findings unsupported by substantial

evidence; and 3) failing to make a proper credibility finding regarding Claimant's testimony.

Doc. No. 16 at 12-15, 19, 21-23. For the reasons set forth below, it is **RECOMMENDED** that

the Commissioner's decision be **AFFIRMED**.

### I.        STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.

42 U.S.C. § 405(g) (2010). Substantial evidence is more than a scintilla – i.e., the evidence must

do more than merely create a suspicion of the existence of a fact and must include such relevant

evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v.*

*Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838

(11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The Court must view the evidence as a whole, considering evidence that is favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560. The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

## II.   ANALYSIS

Claimant argues that the ALJ erred by 1) failing to properly develop the record; 2) making findings unsupported by substantial evidence; and 3) failing to make a proper credibility finding regarding Claimant's testimony. Doc. No. 16 at 12-15, 19, 21-23.

### A.   Duty to Fully and Fairly Develop the Record

Claimant argues that the ALJ erred by failing to fully and fairly develop the record. Doc. No. 16 at 12-15. Social security proceedings are inquisitorial, not adversarial, and the ALJ has a duty to investigate facts and develop arguments for granting and denying benefits. *Sims v. Apfel*, 530 U.S. 103, 110 (2000). Relatedly, the ALJ always has a basic duty to develop a full and fair record. *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995). The claimant, however, has the burden of proving disability and must produce evidence to support the disability claim. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). One district court explained the connection between the claimant's burden and the ALJ's duty as follows:

> Although the burden of proof is on the claimant to prove disability, the ALJ is under a duty to conduct a full and fair inquiry into all the matters at issue. *Ford v. Secretary of Health and Human Services*, 659 F.2d 66 (5th Cir. 1981). Thus, in general, the claimant has the burden of obtaining his medical records and proving that he is disabled. 20 C.F.R. § 404.1512(a) and (c). On the other hand, the Commissioner (*nee* ALJ) has the responsibility to make every reasonable effort to develop the claimant's complete medical history, for at least the twelve months preceding the month in which the claimant filed his application and, if applicable, for the twelve month period prior to the month in which he was last insured. 20 C.F.R. § 404.1512(d).

*Rease v. Barnhart*, 422 F. Supp. 2d 1334, 1372 (N.D. Ga. 2006). Other courts have indicated that an ALJ's "duty to develop the record is triggered when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Reed v. Astrue*, No. 11-00376-B, 2012 WL 4497635, at *6 (S.D. Ala. Sept. 28, 2012).

An ALJ fulfills the duty to fully develop the record by ordering a consultative examination if one is necessary to make an informed decision. *McCray v. Massanari*, 175 F. Supp. 2d 1329, 1339 (M.D. Ala. 2001) (citing *Reeves v. Heckler*, 734 F.2d 519, 522 n. 1 (11th Cir.1984)). The ALJ has "discretion to order a consultative examination where he determines one is warranted, [but] '[i]t is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision.'" *Id.* at 1338-39 (quoting *Reeves*, 734 F.2d at 522 n.1).

A claimant who asserts that the ALJ violated the duty to develop a full and fair record must show "prejudice before we will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record." *Brown v. Shalala*, 44 F.3d at 935. Demonstrating prejudice requires "showing that the ALJ did not have all of the relevant evidence before him in the record . . . or that the ALJ did not consider all of the evidence in the record in reaching his decision." *Kelley v.*

*Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985). "In evaluating the necessity for a remand, [the court is] guided by 'whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" *Brown*, 44 F.3d at 935 (quoting *Smith v. Schweiker*, 677 F.2d 826, 830 (11th Cir. 1982)).

Claimant argues that the ALJ failed to develop the record because the ALJ did not send Claimant for an IQ or any other psychological testing to determine whether she met the listings for intellectual disorder, neurodevelopmental disorders, or neurocognitive disorders, or how her cognitive problems would affect her residual functional capacity ("RFC"). Doc. No. 16 at 13.

The ALJ had before him several reports regarding Claimant's condition. On March 29, 2011, Dr. Nitin Haté, M.D., conducted a disability examination of Claimant and found her neurological examination "essentially normal." R. 594, 596. On September 30, 2011, Dr. Candace Mihm, Ph.D., conducted a Psychiatric Review Technique and found a "Cognitive D/O NOS" disorder. R. 608. She did not check any of the boxes for "12.05 Mental Retardation," and she stated that Claimant alleged learning handicaps. R. 611, 619. Dr. Magaly Delgado, Psy.D., conducted a General Clinical Evaluation with Mental Status Exam and Memory Testing on September 22, 2011, and diagnosed Claimant with "Cognitive Disorder, Not Otherwise Specified[,]" among other things. R. 602, 605. On January 28, 2014, Dr. David J. Fleischmann, Ph.D., conducted a "General Clinical Evaluation with Mental Status" on Claimant. R. 686-89. He diagnosed her under DSM-5 with "Other Specified Bipolar and Related Disorder (With Anxious Distress, Melancholic Features, and Mood Incongruent Features, Moderate Severity[); ] Stimulant Use Disorder, In Sustained Remission, Cocaine[; and] Other Specified Personality Disorder (With Borderline and Antisocial Features)." R. 689. Additionally, there are two reports from state agency psychological consultants—Dr. Gary W. Buffone, Ph.D., dated February 4,

2014 (R. 141) and Dr. Val Bee, Psy.D., dated April 17, 2014 (R. 153). Dr. Buffone and Dr. Bee found that Claimant's primary problems were tied to her antisocial behavior/substance abuse, and when she is sober and compliant with her treatment she only has mild symptoms and impairment. R. 141, 153.

None of the doctors listed above recommended Claimant receive additional IQ or psychological testing, and Claimant does not direct the Court's attention to any medical professional making such a recommendation. Considering the abundance of examinations of Claimant by psychologists, Claimant fails to demonstrate that the ALJ did not have all of the relevant evidence before him. *See Kelley*, 761 F.2d at 1540.

Claimant argues that none of these doctors considered a neurocognitive disorder or intellectual disorder. Doc. No. 16 at 15. This argument is belied by Dr. Haté's and Dr. Delgado's reports. Dr. Haté found that Claimant's neurological examination was "essentially normal." R. 596. Dr. Delgado specifically diagnosed Claimant with a cognitive disorder, R. 605, as Claimant notes in the Joint Memo, Doc. No. 16 at 15. Also, Dr. Mihm diagnosed Claimant with "Cognitive D/O NOS" disorder, did not check any of the boxes for "12.05 Mental Retardation," and stated that Claimant alleged learning handicaps. R. 608, 611, 619. Claimant fails to show any evidentiary gaps in the record that would result in unfairness or clear prejudice. *See Brown*, 44 F.3d at 935. It is therefore recommended that the Court reject the argument that the ALJ did not fully and fairly develop the record.

### B.      Whether the Findings are Supported by Substantial Evidence

In arguing that the ALJ's findings are not supported by substantial evidence, Claimant points to the ALJ's summary of Dr. Fleischmann's report, in which the ALJ states that Claimant "performed a wide variety of activities of daily living . . . ." Doc. No. 16 at 19; R. 27. Claimant

then refers to the language in Dr. Fleischmann's report that Claimant "described a rather sedentary, restricted/limited pattern of daily activities." R. 688.

In Dr. Fleischmann's report, he describes Claimant's daily activities as the following: caring for her own hygiene, dressing herself, riding in cars with others or on the bus, housekeeping, watching television, shopping with a friend, taking walks, talking with a friend and relatives, and going to church. R. 688. Dr. Fleischmann wrote in his report that Claimant does these things; in contrast, he wrote that *Claimant describes* "a rather sedentary, restricted/limited pattern of daily activities." R. 688. It is not clear if the characterization of her daily activities is Dr. Fleischmann's or Claimant's. As there is substantial evidence supporting the ALJ's characterization of Claimant's daily activities listed in Dr. Fleischmann's report as being of a wide variety, it is recommended that the Court reject this argument. *See Phillips v. Barnhart*, 357 F.3d at 1240 n.8 (the court may not reweigh the evidence or substitute its judgment for the Commissioner's).

## C.     ALJ's Credibility Determination

Claimant argues that the ALJ's credibility determination is not supported by substantial evidence. Doc. No. 16 at 21-23. Claimant contests three of the ALJ's reasons for not finding her fully credible regarding "her problems with memory and low attention span . . . ." *Id.* at 21. The ALJ, however, did not specify that he did not find Claimant fully credible regarding her problems with memory and low attention span. Instead, he simply found her "subjective complaints" not fully credible and provided reasons for that finding, including reasons that Claimant does not address.

In his decision, the ALJ stated the following:

> [T]he claimant's subjective complaints are not fully credible
> considering the claimant's own description of her activities and life

> style [*sic*], the degree of medical treatment required, discrepancies
> between the claimant's assertions and information contained in the
> documentary reports, the claimant's demeanor at the hearing, the
> reports of the treating and examining practitioners, the medical
> history, the findings made on examination, and the claimant's
> assertions concerning her ability to work.

R. 30. In support of his conclusion regarding Claimant's activities and lifestyle, the ALJ refers to

Claimant's report in January 2014 that she lives in an apartment with a roommate, cares for her

own hygiene, dresses herself, rides with others in cars or on the bus to get to her destinations,

watches television, cleans, takes walks with a friend to go shopping with her food stamps, talks

with her friend, talks with her relatives on the phone, and attends church. R. 30-31. The ALJ also

referred to Claimant's pastor's testimony that Claimant ministers to the elderly and feeds the

hungry three times per week. R. 31. These activities are supported by the pastor's testimony at

the October 31, 2014 hearing[1] and Dr. Fleischmann's report. R. 54, 688.

Regarding the degree of medical treatment required and Claimant's medical history, the

ALJ recounted that Claimant reported that her symptoms were stable on her present medications,

that there were no major concerns about side effects from her medications, and that there were

"significant gaps in the claimant's history of treatment and no need for emergency medical care

or inpatient hospitalizations, which suggests no significantly limiting symptoms." R. 30.

Claimant does not challenge these findings. In this paragraph, the ALJ cites four exhibits. R. 30.

The exhibits include a report dated January 14, 2014, that states that Claimant had not seen a

mental health doctor in over two years. R. 455. Also included is the Lakeside Behavioral

Healthcare Psychiatric/Medication Evaluation Form dated June 25, 2012, which states that

Claimant said that the adjustment made to her medication helped and she does not hear voices

---

[1] Claimant's pastor also testified regarding the difficulties Claimant has in staying on task while ministering to the
hungry and elderly, R. 54-57, but the Court is not permitted to reweigh the evidence. *Phillips v. Barnhart*, 357 F.3d
at 1240 n.8.

any more. R. 625. A box is also checked for no side effects being noted. R. 625. At her April 30, 2012, appointment, Claimant stated that her depression and sleeping were better and again the box was checked indicating no side effects. R. 629. On March 15, 2012, she had no concerns and no side effects. R. 633. On January 23, 2012, she reported doing well on the medications, sleeping better, being less depressed, and not hearing any voices since taking the medications. R. 635. The exhibits also include Claimant's Brief Psychiatric Assessment from the Health Care Center for the Homeless ("HCCH"), dated March 17, 2014, in which it stated that Claimant "has been very stable on present medications. . . . She . . . generally is doing fairly well." R. 30, 695. In a report dated April 18, 2014, also from the HCCH, it noted that Claimant reported last going to the emergency room or the hospital thirteen years before for childbirth. R. 699. Thus, there is substantial evidence supporting the ALJ's reasons for not finding Claimant fully credible based on the degree of her medical treatment and medical history.

Claimant contests the ALJ's discounting of her credibility based on her having never worked above the level of substantial gainful activity. Doc. No. 16 at 21-22. Claimant contends that she tried many times to work, "which should indicate that she was not able to sustain  work due to her attention span and memory problems, not that she did not want to work . . . ." *Id.* at 22.

In support of using Claimant's failure to work at a level of substantial gainful activity in his credibility determination, the ALJ relied on Claimant's statement that she stopped working as a housekeeper because she was bored with the job, she receives state benefits, does not have to pay rent, and only has to buy groceries. R. 30. These observations are supported by the record, R. 692, and a reasonable person would accept the ALJ questioning Claimant's motivation to work

when there is evidence in the record that she quit a job due to being bored with it. The ALJ's reason for questioning Claimant's motivation to work is supported by substantial evidence.

Claimant next attacks the ALJ's credibility determination "that the claimant may have consciously attempted to portray limitations than are not actually present in order to increase the chance of obtaining benefits." R. 30; Doc. No. 16 at 22. In support of this determination, the ALJ stated that Claimant testified that she was functionally illiterate and could not read, but reported that she graduated high school with a "regular diploma," had some special reading and math education, and in a Disability Report, indicated that she could read and understand English. R. 30.

Claimant argues that her receiving a "regular diploma" is not a sufficient reason because the ALJ cites to Dr. Fleischmann's report, but Claimant also told Dr. Fleischmann that she could not read fluently and reads on a first grade level, which is what she testified to at the hearing. Doc. No. 16 at 22. Claimant submits that the medical records clearly indicate that she received a special diploma, citing her education records and Claimant's statement to Dr. Delgado. *Id.* Finally, Claimant contends that the ALJ should not have relied on a yes-or-no question on a form asking whether Claimant could read and understand English because the question asks whether she can both read and understand English, with no option for a person who understands English but cannot read it. *Id.* at 22-23. Claimant also argues that reliance on this form is unacceptable because the form is not signed or dated, and it is unclear who filled out the form and whether that person gave Claimant the opportunity to clarify her answer regarding her reading ability. *Id.* at 23.

In his decision, the ALJ copied, almost verbatim, the statement from Dr. Fleischmann's report regarding Claimant's high school education. R. 30, 687. Claimant's high school transcript

states that she received a "special diploma." R. 544. Thus, this reason is not supported by substantial evidence.

Claimant's argument as to why the ALJ should not rely on the form loses credibility when reviewing the entire form, however. First, the question on the form immediately before "Can you read and understand English?" is "Can you speak and understand English?" R. 419. Thus, there is an option on the form for a person that can understand English, but not read it. Second, the form presents the question, "Who is completing this report?" R. 420. This was answered, "The person who is applying for disability." R. 420. Although Claimant points to the lack of signature and date, this goes to the weight that the form should be given, which is the ALJ's decision that the Court may not second guess. *Phillips v. Barnhart*, 357 F.3d at 1240 n.8 (the court may not reweigh the evidence or substitute its judgment for the Commissioner's).

As only one of Claimant's arguments regarding the ALJ's credibility determination has merit, and the ALJ's other reasons are supported by substantial evidence, it is recommended that the Court reject this argument as a reason for reversing the finding of no disability. *See Pouyadou v. Colvin*, No. CIV.A. 13-00171-N, 2013 WL 5934495, at *7 (S.D. Ala. Nov. 5, 2013) (finding that, although three of the ALJ's reasons for discrediting the claimant's credibility out of the five given were not sufficient, "the multiple proper reasons for discounting [the claimant's] credibility, all of which are supported by substantial evidence, necessitate a finding of no error."). The ALJ clearly articulated his credibility finding with substantial supporting evidence in the record. *See Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).

### III.    CONCLUSION

For the reasons stated above, it is **RECOMMENDED** that:

1.   The final decision of the Commissioner be **AFFIRMED**; and

2.   The Clerk be directed to enter judgment for the Commissioner and close the case.

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

**RECOMMENDED** in Orlando, Florida, on February 15, 2018.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies to:

Suzanne Lynn Harris, Esq.
Of counsel, Olinsky Law Group
One Park Place
300 South State Street, Suite 420
Syracuse, NY 13202

W. Stephen Muldrow
Acting United States Attorney
John F. Rudy, III
Assistant United States Attorney
Suite 3200
400 N. Tampa St.
Tampa, FL 33602

Malinda Hamann, Acting Regional Chief Counsel
John C. Stoner, Acting Regional Deputy Chief Counsel

Brian Seinberg, Branch Chief
Jennifer Patel, Assistant Regional Counsel
Social Security Administration
Office of the General Counsel, Region IV
Atlanta Federal Center
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia 30303-8920


The Honorable Douglas A. Walker
Administrative Law Judge
c/o Office of Disability Adjudication and Review
SSA ODAR Hearing Ofc
3505 Lake Lynda Dr.
Suite 300
Orlando, FL 32817-9801